IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

BRIAN EVANS, MARY BETH EVANS,
and ACE-USA/ESIS,

      Plaintiffs,

v.                                                                             CV 09-1047 WPL/DJS

HOME DEPOT USA, INC., DOE MANUFACTURING
CORP., RICHARD DOE, JANE DOE, ROBERT DOE,
WILLIAM DOE, NANCY DOE, AND ANN DOE,

      Defendants.

**ORDER**

This matter is before me on a motion to remand and related briefing. For the reasons that follow, I will deny the motion.

*Factual and Procedural Background*

On April 29, 2009, Plaintiffs filed this suit in New Mexico state court, alleging that when Plaintiff Brian Evans attempted to repair a flat tire on a hand truck that had been supplied by Defendant Home Depot, "the wheel came apart with a violent force striking Brian Evans in the face causing severe and permanent personal injury." (Compl. ¶ 2.) According to the complaint, Brian Evans "was severely injured in his person, the community of Brian Evans and Mary Evans [Brian's wife] was injured financially and Mary Evans lost a consortium of Brian Evans." (*Id.* ¶ 6.) The complaint alleges that Plaintiff Ace-USA/ESIS was the worker's compensation carrier for Brian Evans's employer and is therefore entitled to partial reimbursement or a subrogated interest in the judgment. (*Id.* ¶¶ 1, 3.) The complaint seeks unspecified compensatory and exemplary damages.

(*Id.* ¶ 10.) In addition to Home Depot, the complaint names several "Doe" Defendants, who were allegedly involved in designing, manufacturing, and merchandising the hand truck. (*Id.* ¶ 1.)

On June 3, 2009, Plaintiffs' counsel sent a letter to Home Depot's counsel, showing that Brian Evans's medical expenses and lost wages to that date totaled $49,364.89. (Memo. in Support of Mot. Remand Ex. 1.) Attached to the letter were medical records and statements of charges. (*Id.*)[1] The medical records indicate that a tire exploded in Evans's face in May 2006, resulting in traumatic injuries to the "right frontal area" and the "frontal sinus with a fracture of both the anterior and posterior plates." He had plastic surgery on his face soon after the incident and experienced headaches and blurred vision for a few months. After the initial surgery, Evans was left with a fifteen-centimeter scar. In May 2007, his doctor noted, "With dynamic movement of the forehead there are obvious functional issues and severe cosmetic deformity." Therefore, he had additional plastic surgery at that time. His surgeon believed that the additional surgery could improve the scar by approximately 50% but could not eliminate the scar. (*Id.*)

On October 6, 2009, Plaintiffs served Home Depot with a settlement demand in the amount of $575,000 for Brian Evans and $65,000 for Mary Evans. (Notice of Removal ¶ 3.)[2] On November 2, 2009, Home Depot removed the case to this Court.

### *Timeliness of Removal*

A notice of removal must generally be filed within thirty days after the defendant receives a copy of the initial pleading. *See* 28 U.S.C. § 1446(b). However, "[i]f the case stated by the initial

---

[1] These documents are not separately numbered within exhibit 1.

[2] Although the notice of removal states that a true and correct copy of the settlement demand is attached as exhibit C to the notice, there is no exhibit C. However, Plaintiffs do not dispute that they served the settlement demand on the date and in the amounts claimed by Home Depot.

pleading is not removable," the notice of removal may be filed within thirty days after the defendant receives "a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable . . . ." *Id.* Failure to file the notice of removal within the time set forth in § 1446(b) constitutes a defect in removal procedure, warranting a remand. *Huffman v. Saul Holdings Ltd. P'ship*, 194 F.3d 1072, 1077 (10th Cir. 1999).

Plaintiffs assert that Home Depot could have determined from the complaint's allegations of severe and permanent injury that more than $75,000 is in controversy in this case, thus meeting the amount-in-controversy requirement for diversity jurisdiction. *See id.* at 1079 (holding that removing defendant must establish amount in controversy). They cite three out-of-circuit district court cases.

In one of the cases, a judge in the Western District of Kentucky held that the thirty-day period commenced upon service of a complaint that alleged negligence, permanent physical injury, mental pain and suffering, medical expenses and permanent impairment of earning capacity, but did not pray for a particular sum in damages. *Mozee v. Dugger*, 616 F. Supp. 2d 672, 673 (W.D. Ky. 2009). When he filed his complaint, the plaintiff submitted requests for admission, one of which asked the defendants to admit that he was entitled to $100,000 for pain and suffering. The court acknowledged that the "bare bones complaint . . . yield[ed] an uncertainty," but noted that the defendants had actual knowledge of the plaintiff's extensive injuries and monetary losses, as well as actual knowledge that the plaintiff himself valued the case at above the jurisdictional minimum. *Id.* at 674. The complaint in this case is even more bare bones than the one in *Mozee* and there was no contemporaneous recognition by Plaintiffs that the case is worth more than $75,000.

In another case, the complaint alleged injuries causing disability, impairment, loss of enjoyment of life, pain and suffering, and future pain and suffering, but did not pray for a particular

3

sum in damages. The court held that these allegations were sufficient to advise the defendant that the $75,000 amount-in-controversy requirement had been satisfied. *Carroll v. United Air Lines*, 7 F. Supp. 2d 516, 522 (D.N.J. 1998). The court stated, "It is not necessary that the amount in controversy be stated in the initial pleading in order to trigger the running of the thirty-day period for removal. Rather, the thirty-day period begins to run when a defendant can reasonably and intelligently conclude from the pleadings that the amount in controversy exceeds the jurisdictional minimum." *Id.* at 521.

In the final case, a court followed *Carroll* and remanded where the complaint contained similar allegations as those in *Carroll*. *Sims v. PerkinElmer Instruments, LLC*, No. Civ.A. 04CV3773, 2005 WL 746884, at *2-3 (E.D. Pa. March 31, 2005). The *Carroll* standard appears to be inconsistent with the Tenth Circuit precedent discussed below.

Plaintiffs further assert that even if the allegations in their complaint were insufficient to start the running of the thirty-day removal period, the June 3, 2009 letter and attachments started the period because "[a]ny attorney with experience in personal injury litigation would know that the amount at issue with these facts and special damages was several multiples of the jurisdictional amount of $75,000." (Memo. in Support of Mot. Remand at 6.)

Home Depot counters that the complaint does not specify an amount of damages and its vague allegations are insufficient to indicate the amount in controversy. Home Depot points out that Plaintiffs' claims cannot be aggregated to meet the jurisdictional minimum. Because the attachments to the June 3rd letter indicate that Plaintiff Ace-USA/ESIS paid Brian Evans's medical bills, Home Depot asserts that only Ace-USA/ESIS is entitled to recover these damages. As the worker's compensation carrier, Ace-USA/ESIS does not have a claim for damages beyond what it has paid on Evans's claim. As for the claims of Brian Evans, Home Depot asserts that the medical

records attached to the June 3rd letter show that he was discharged the same day as his surgery and returned to work less than two months after the accident. The records did not show that he suffered any permanent disability or impairment or that he would incur lost wages in the future. Home Depot thus argues that the June 3rd letter and attachments did not show that the jurisdictional minimum has been met.

Contrary to Home Depot's argument, Ace-USA/ESIS does not have a direct claim against Home Depot for the medical bills it paid for Brian Evans; it only has a cause of action for reimbursement against Evans. *See Liberty Mut. Ins. Co. v. Salgado*, 125 P.3d 664, 667 (N.M. Ct. App. 2005) (rejecting argument that insurers have a direct right of subrogation against third-party tortfeasors). "Because the right to collect is the worker's, the employer/insurer does not own the right to enforce liability." *Id.* And "an employer's/insurer's statutory right of reimbursement is not effective until a worker recovers upon the third-party claim by verdict or settlement." *Id.* Accordingly, the June 3rd letter and attachments show that Brian Evans has a claim for $49,364.89 in damages for medical expenses and lost wages. The attachments also show, again contrary to Home Depot's assertions, that Brian Evans has a permanent scar on his face and severe cosmetic deformity. The attached medical records further show that Evans had more than one surgery and suffered several months of headaches and blurred vision. These records support the complaint's allegation of a severe and permanent injury. Although, as Plaintiffs suggest, an experienced personal injury litigator would likely speculate from these facts and allegations that Home Depot's potential exposure exceeds $75,000, the Tenth Circuit appears to require more than such speculation to start the thirty-day removal period.

Discussing 28 U.S.C. § 1446(b), the Tenth Circuit has stated, "If the statute is going to run, the notice ought to be unequivocal. It should not be one which may have a double design." *DeBry*

*v. Transamerica Corp.*, 601 F.2d 480, 489 (10th Cir. 1979). Therefore, "the removal period does not begin until the defendant is able 'to intelligently ascertain removability so that in his petition for removal he can make a simple and short statement of the facts.'" *Huffman*, 194 F.3d at 1078 (quoting *DeBry*, 601 F.2d at 489). The word "ascertain" means "to . . . learn with certainty. " *DeBry*, 601 F.2d at 489. Consequently, the word "ascertained" as used in section 1446(b), "means a statement that 'should not be ambiguous.'" *Akin v. Ashland Chem. Co.*, 156 F.3d 1030, 1035 (10th Cir. 1998) (quoting *DeBry*, 601 F.2d at 490). A defendant is not required to investigate to determine removability when the initial pleading indicates merely that the right to remove "*may* exist." *Id.* at 1036. Instead, the Tenth Circuit "requires clear and unequivocal notice from the pleading itself, or a subsequent 'other paper' such as an answer to interrogatory." *Id.*

I have found two cases in which district courts, relying on Tenth Circuit law, held that the thirty-day period did not commence upon service of the complaint even though the complaints sought at least $50,000—close to the $49,364.89 revealed in the June 3rd letter. In a case from the District of Kansas, the complaint "set out a laundry list of alleged injuries and requested damages 'in excess of $50,000.'" *Fragel v. Trinity Indus. Transp., Inc.*, 978 F. Supp. 1395, 1396 (D. Kan. 1997). Citing *DeBry*, the court held, "Although plaintiff's petition alleged an array injuries, the information was not sufficient to permit defendant to know with certainty that the amount in controversy exceeded $75,000." *Id.* at 1397. In a similar case from the District of Maryland, an employment discrimination complaint sought not less than $50,000 for pain and suffering, emotional distress, mental anguish, lost pay and benefits, front pay, punitive damages, reasonable attorney's fees, and taxes due on any award. *Hemphill v. Safeway, Inc.*, 430 F. Supp. 2d 517, 518 (D. Md. 2006). Citing the Tenth Circuit's decision in *Akin*, the court held that the complaint was not sufficient to start the thirty-day clock. The court noted that the defendant "would have had to

6

engage in speculation" to conclude that the plaintiff actually sought damages exceeding $75,000. *Id.* at 519.

As in the cases cited above, Home Depot would have had to engage in speculation to conclude that $75,000 was at issue after receiving the complaint and the June 3rd letter and attachments. Although these documents indicated that the right to remove "*may* [have] exist[ed]," *Akin*, 156 F.3d at 1036, they did not establish that right unequivocally. Therefore, Home Depot's notice of removal, filed within thirty days of the settlement demand exceeding $500,000, was timely.

### *Doe Defendants*

Plaintiffs also assert that this Court lacks jurisdiction over the removed case because at least some of the Doe Defendants are citizens of New Mexico and are indispensable parties. Plaintiffs state that they will seek leave to file an amended complaint, adding the actual names of the Doe Defendants, as soon as they can get Home Depot to identify them. Plaintiffs contend that the case should be remanded for a lack of complete diversity once the amended complaint is filed.

The removal statute provides that "the citizenship of defendants sued under fictitious names shall be disregarded." 28 U.S.C. § 1441(a). Accordingly, "the presence of 'John Doe' defendants at the commencement of an action creates no impediment to removal." *McPhail v. Deere & Co.*, 529 F.3d 947, 951 (10th Cir. 2008).

*McPhail* involved a procedural scenario similar to the one presented here. The complaint in that case named three John Does. After removal to federal court, the plaintiff determined that she and the John Does were citizens of the same state, but the plaintiff failed to amend her complaint before the district court granted summary judgment against her. The plaintiff claimed that she did not learn the true identities of the John Does until shortly before the summary judgment ruling and

7

that her ability to amend the complaint before the ruling was dependent on information controlled by the only named defendant. On appeal, she contended that diversity jurisdiction was lacking. *Id.*

In addressing the plaintiff's contention, the Tenth Circuit began by reciting the rules that apply when a non-diverse party is added after removal. The court noted that if, after removal, a complaint is amended to replace John Does with non-diverse defendants identified by name, a court may either deny the amendment or permit it and remand the action to state court. *Id.* (citing 28 U.S.C. § 1447(e)). "Further, under Rule 19 the district court must determine whether the party sought to be joined is indispensable. If so, Rule 19 requires the court either to join the party, in which case remand is necessary under § 1447(e), or to deny joinder, in which case Rule 19(b) also requires that the action be dismissed." *Id.*

After reciting these rules, the Tenth Circuit held that it had "no occasion here to apply these principles to the district court's decision, because [the plaintiff] never attempted to amend her complaint." *Id.* at 952. "Accordingly, as matters now stand, the complaint names parties who are wholly diverse, and there is no basis for remanding to state court. . . . Having never been presented with a motion to amend the complaint to substitute non-diverse defendants in place of the unidentified defendants, the district court did not err in determining that it has diversity jurisdiction." *Id.*

Here, as in *McPhail*, Plaintiffs have not sought leave to amend their complaint. Unlike in *McPhail*, they have not even determined the identities and citizenship of the Doe Defendants. They simply speculate that some of them will be citizens of New Mexico. Thus, the Doe Defendants provide no basis for remand.

### *Conclusion*

The motion to remand is denied.

IT IS SO ORDERED.

_____
WILLIAM P. LYNCH
UNITED STATES MAGISTRATE JUDGE

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any *pro se*
party as they are shown on the Court's docket.